**UNITED STATES BANKRUPTCY
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

IN RE:

ROBERT LOUIS MARRAMA,                   CHAPTER 13
            DEBTOR                              CASE NO. 06-11842-WCH

**MEMORANDUM OF DECISION REGARDING MOTION FOR STAY PENDING
APPEAL AND REQUEST FOR CERTIFICATION FOR DIRECT APPEAL**

I. <u>Introduction</u>

        When Robert Louis Marrama (the "Debtor") filed the above-captioned case, he had a

pending Chapter 7 case in which he was denied his discharge.  I granted a motion to dismiss this

case after I concluded that the Debtor was ineligible to be a Chapter 13 debtor under 11 U.S.C.

§ 109(e).  The Debtor filed an appeal of that order and seeks a stay pending appeal to avoid

losing his home to foreclosure.  The Debtor also seeks a direct appeal to the First Circuit.  For the

reasons set forth below, I conclude that the Debtor has not met the standards to warrant

imposition of a stay pending appeal and deny his request for certification for direct appeal under

28 U.S.C. § 158(d)(2).

II. <u>Background</u>

        Robert Louis Marrama filed a petition ("Petition 1") for relief under Chapter 7 (the

"Chapter 7") on March 11, 2003 which he signed under the pains and penalties of perjury.  In

Schedule A of Petition 1, the Debtor listed a residence in Gloucester, MA (the "Property") with a

1

market value of $300,000 and secured claims in excess of that amount, many of which he

represented in Schedule D were subject to avoidance.  In Schedule B of Petition 1, the Debtor

listed only a potential claim against Citizens Bank.  In Schedule F of Petition 1, the Debtor listed

unsecured nonpriority claims in the amount of $231,813.00.  Of that value, the Debtor listed

claims of $178,205 that were not contingent, unliquidated or disputed.[1]  In Schedule I, the Debtor

disclosed that he worked for Capital Carpet & Flooring at the time he filed the petition and that

he earned $5,762 monthly and had $4,925 in monthly expenses.  In Petition 1, the Debtor

disclosed that he had been the owner of RLM Flooring which company was no longer doing

business.

On March 1, 2005, the Chapter 7 trustee filed a Notice of Intent to Abandon 47 E. Main

St. Gloucester, MA on the grounds that the Property had a fair market value of $360,242 and was

encumbered by three mortgages totaling approximately $1,210,582 and a homestead of $300,000.

Shortly after the forgoing notice, I granted the Debtor's motion to avoid four liens on the

Property which totaled approximately $435,261 ("Lien Motion").  The four liens were as

follows: Citizens Bank: $250,000 (an attachment); Frederick Ciampa: $22,000 (an attachment);

EIC Development: $142,261 (an execution after judgment); and Salem Five Cents Savings:

$21,000 (an attachment).  These liens were against both the Debtor's former company and the

Debtor individually.  In the Lien Motion, the Debtor listed three mortgages on the Property and

represented that he shortly would file an adversary proceeding to contest the validity of only the

third mortgage of Presidential Financial Corp.  The Amended Order for the Lien Motion was

---

[1]In a bankruptcy petition, three boxes appear next to a listed debt.  The three boxes allow
a debtor to indicate whether the debtor concludes that a debt is contingent, unliquidated or
disputed.

entered on July 7, 2006.

During the Chapter 7, the holder of the second mortgage, Camelot Financial, Inc.

("Camelot") filed an initial motion for relief from stay.[2]  The Debtor filed an objection in which

he requested a copy of the promissory note and an accounting and argued that he only received

$100,000 of the $160,000 loan.  On October 27, 2004, I entered an order requiring Camelot and

the Debtor to file their stipulation regarding the motion for relief and objection.  The parties

never filed the stipulation.  Camelot filed a second motion for relief in which it explained that the

parties, in fact, had entered into a forbearance agreement on December 8, 2004 and as a result of

the Debtor's failure to remain current on his contractual obligations it was entitled to relief from

stay.[3]  The Debtor failed to respond to the motion and I granted Camelot relief from the

automatic stay on February 14, 2006.

The Debtor was denied his discharge in the Chapter 7 as a result of his having

"transferred valuable assets belonging to him, less than a year before he petitioned for bankruptcy

protection, with the actual intent to defraud his creditors."  *See Marrama v. Citizens Bank of

Massachusetts*, 445 F.3d 518, 524 (1st Cir. 2006).[4]  On June 12, 2006, the United States Supreme

---

[2]Approximately six weeks after the Debtor filed the Chapter 7, the holder of the first mortgage on the Property moved for relief from stay for cause based upon the Debtor's lack of both equity and prospect for reorganization.  The Debtor did not object and I granted the motion.

[3]In the Forbearance Agreement attached to the relief from stay motion, the parties agreed that "Camelot may institute foreclosure proceedings against the Premises, including a foreclosure sale auction, without further notice, but subject to any applicable state or federal laws." Forbearance Agreement, ¶ 7.

[4]The First Circuit decision is dated April 20, 2006.  The docket in that case contains no subsequent substantive entries.  In his response to the Order to Show Cause, described below, the Debtor represents that he does not intend to seek further review of this decision but the time period for seeking such review has not expired.

Court granted *certiorari* in the case of *Marrama v. DeGiacomo*, 430 F. 474 (1st Cir. 2005), in

which the First Circuit affirmed the denial of the Debtor to convert the Chapter 7 to one under

Chapter 13 because the Debtor had engaged in "bad faith" conduct, *see* 2006 WL 316685

(2006).[5]   The Chapter 7, which the docket reflects is an "asset" case, remains open and the

Chapter 7 trustee has not filed a final report.   The claims register in the Chapter 7 reflects that the

filed unsecured claims total approximately $733,844 and the docket does not contain any

objections to those claims.

On June 13, 2006, the Debtor filed a petition ("Petition 2") under Chapter 13 (the

"Chapter 13") thereby opening the above-captioned case.   In Schedule A to Petition 2, the Debtor

listed the Property with a market value of $369,000 subject to secured claims of $395,000.   In

Schedule B to Petition 2, the Debtor did not list any contingent claims.   In Schedule C to Petition

2, the Debtor claimed a homestead in the Property.   In Schedule D to Petition 2, the Debtor listed

a first mortgage, Camelot's second mortgage and two other mortgages which he claimed were

disputed and which he valued at zero.

In Schedule F to Petition 2, the Debtor listed unsecured nonpriorty debt of $285,450 and

disclosed at the end that he was notifying the creditors in this schedule as a matter of due process

because he was denied a discharge in the Chapter 7.   The Debtor attributed to the claims in

Schedule F that were also contained in Petition 1 a value of $0 despite having given individual

---

[5]In his Petition for a Writ of Certiorari, *Marrama v. Citizens Bank of Massachusetts*, 74
USLW 3475, 2006 WL 295220 (2006), the Debtor represents that he was unemployed at the time
he filed the Chapter 7 and sought conversion only when he gained employment.  As described
above, however, in Petition 1 the Debtor disclosed that he was employed at the time he filed for
relief and had income in excess of his expenses.  He signed that petition under the pains and
penalties of perjury.

4

amounts in the Chapter 7 and despite the lack of representation that the claims had been satisfied.

The Debtor explained that he listed the debts at $0 because he had no other basis on which to

state any other amount.[6]  In addition to the Chapter 7 debts, the Debtor listed approximately nine

new debts in Schedule F which included one to Citizens Bank in the amount of $275,000 for a

"possible personal liability for corporate debt."  The Debtor did not list the debt as contingent,

unliquidated or disputed.[7]  In Schedule I, the Debtor disclosed that he has worked for Capital

Carpet for three years and that his income from that employer and from a real property rental

totals $6,884 per month.  In Schedule J, he listed his monthly net income as $2,117.  In the

Chapter 13 plan which the Debtor submitted, the Debtor listed only the first and second

mortgages and represented as to the latter mortgage to Camelot:

> The Debtor contends that this mortgage was given for business purposes and is
> predatory in nature due to the unusual nature of the payment schedule and interest
> rate.  The Debtor intends to commence an adversary proceeding to determine the
> amount actually owed.  No payments shall be made to Camelot unless and until
> ordered by the Court.  No balance is owed to any other creditor because no money

---

[6]With respect to the claims which were the subject of the Lien Motion, the Debtor listed
in Petition 2 the claims of Salem Five Cents Savings Bank, Frederick Ciampa, and EIC
Development LLC at $0 and claimed that they were contingent and disputed.  He also described
these debts as "possible personal liability for corporate debt."  Although the Court did not raise
the issue in the Order to Show Cause, described below, this is a curious description of the EIC
Development LLC claim given that in his original motion to avoid liens the Chapter 7 the Debtor
attached a copy of the execution which reflected that EIC Development LLC obtained a judgment
against the Debtor individually in September of 2002 and an execution in the amount of
$142,261 in October 2002. *See* Case No. 03-11987-WCH, Docket No. 8.

[7]In the Order to Show Cause, I questioned this description of the debt given that during
the Chapter 7 the Debtor acknowledged that the debt was based upon a personal guarantee, *see*
Case No. 03-11987, Docket No. 177; *see also, Marrama v. Citizens Bank of Massachusetts,* 445
F.3d 518, 519 (1st Cir. 2006) ("RLM Flooring maintained a line of credit with Citizens Bank,
which Marrama had guaranteed personally.").  In his response to the Order to Show Cause, the
Debtor acknowledged that this claim should not have been listed as "possible personal liability
for corporate debt."

was actually disbursed.

In his plan, the Debtor provided that his payment of $0 to unsecured creditors is required because the amount of the claim of Camelot is unclear. He offered a formula for potential payments in the event that I determine that Camelot is owed something.

On June 15, 2006, Camelot filed a motion for relief from stay for cause under 11 U.S.C. § 362(a)(1) on the grounds that the Debtor has failed to remain current on his contractual obligations. The Debtor filed an objection to the motion in which he admitted to being in default under the forbearance agreement but claimed that he reserved under the agreement all of his rights under the original contract and existing law. In his objection, the Debtor contended that the motion did not comport with the local rules with respect to the information to be contained in the motion and did not provide cause for relief. The Debtor also explained that he was uncertain of the priority of Camelot's mortgage. In addition, the Debtor filed a Motion for Sanctions Against Camelot Financial or its Counsel on the grounds that because the motion for relief referred only to pre-petition defaults, there was no cause for relief and therefore sanctions were warranted because the motion was designed to harass the Debtor and thereby unnecessarily multiply the proceedings.

On June 23, 2006, Camelot filed a motion to dismiss. In it, Camelot argued that the Chapter 13 should be dismissed for cause because it was a bad faith filing based upon the Debtor having not only a pending case but one in which the issue of the Debtor's conversion was before the Supreme Court. Further indicium of bad faith, Camelot argued, was that the Debtor's conduct in the Chapter 7 indicated a pattern of abusing the Bankruptcy Code. In support, Camelot attached a memorandum of law in which it represented that the majority of courts that

6

have considered the issue have ruled that a debtor is not entitled to file a Chapter 13 while the

debtor has a Chapter 7 pending.  It also cited to cases which have set forth factors to determine

whether a debtor filed a case in bad faith.

The Debtor filed an objection to the motion to dismiss in which he stated that the Chapter

7 is irrelevant and claimed he was "mystified" as to how filing a Chapter 13 case could be in

contravention of my prior order denying the conversion of the Chapter 7 to a Chapter 13.  He

argued that there were no assets in this case that could be considered property of the Chapter 7.

The Debtor also filed a motion for sanctions against Camelot because it filed the motion to

dismiss.  The Debtor argued that the facts in the motion to dismiss were incorrect.  In support,

the Debtor pointed to the fact that Camelot incorrectly stated that the Debtor had not received his

discharge which he argued does not fully disclose that the Debtor was denied his discharge.[8]  The

Debtor was shocked that Camelot would describe his property as non-exempt when I ruled that it

was exempt in a prior case.  The Debtor argued that based upon the misstatements of fact, the

motion to dismiss was sanctionable.

In addition to the forgoing pleadings of Camelot and the Debtor, on June 27, 2006 I issued

my Order to Show Cause (the "Order").  In it, I described the Chapter 7 including the pleadings,

schedules, and appeals and the events of the Chapter 13.[9]  I represented that it appeared that the

Debtor was ineligible to file for relief under Chapter 13 as his debts appeared to exceed the

---

[8]This is a curious argument because a few paragraphs later, the Debtor refers to the Chapter 7 as a "previous" case when, in fact, it is a "pending" case.

[9]I may take judicial notice of the dockets and documents in the Debtor's two pending cases.  *See, e.g., In re Hyde*, 334 B.R. 506, 508-9 n. 2 (Bankr. D. Mass. 2005)

allowable debt limits.[10]

I represented that the motions to dismiss and for relief were within the parameters of accepted case law and pointed out that, in turn, the case and pleadings of the Debtor could be determined to have been filed in bad faith and sanctionable. With respect to the motion to dismiss I pointed out that although the Debtor argued that it was sanctionable for Camelot to have not known that the Court had ruled in the Debtor's favor on his exemption in the Property, he did not explain that the United States Bankruptcy Appellate Panel for the First Circuit (the "BAP") suggested in a decision that the Property should not have been exempted. *Marrama v. Citizens Bank of Massachusetts et al. (In re Marrama)*, 313 B.R. 525, 534 (1st Cir. B.A.P. 2004) ("We conclude that the Debtor attempted to obtain a homestead exemption in property in which he did not intend to reside.").

Moreover, I suggested that there were ample grounds for seeking a dismissal based upon bad faith. For example, I pointed out that the Debtor filed the Chapter 13 at a time when his Chapter 7 is not only pending, it is before the United States Supreme Court on the issue of his ability to convert to a Chapter 13. Moreover, I granted Camelot's second unopposed motion for relief from stay in the pending Chapter 7 only four months ago. I noted that in the Lien Motion the Debtor represented that he would file an adversary proceeding to address the third mortgage

---

[10]The paragraph was written as follows:
WHEREAS, after adding the unsecured claims from the Chapter 7 to the unsecured claims in the Chapter 13, including the claim of Citizens which appears to be an actual unsecured debt and not merely a possible personal liability for a corporate debt, it appears the Debtor has exceeded the debt limits for a Chapter 13 debtor, *see* 11 U.S.C. § 109(e), and is ineligible to be a Chapter 13 debtor.

Order to Show Cause, Docket No. 37, p. 5.

on the Property but has failed to so proceed and that in the Chapter 13, the Debtor once again

represents that he will file an adversary proceeding to address certain mortgages on the Property,

albeit on alternative and cryptic grounds.  I pointed to the fact that the Debtor has filed a Chapter

13 Plan which provides for no distribution to his unsecured creditors, the same creditors who

appeared in the Chapter 7 in which he was denied a discharge.  I noted that because the real

property, secured claims (absent judicial liens) and unsecured claims are substantially the same in

the Chapter 7 and the Chapter 13, it appears that the only reason why the Debtor has filed for

relief in the above-captioned case is to delay foreclosure and revive a claim against Camelot

which he failed to pursue in the pending Chapter 7.

   With respect to the relief from stay motion, I noted that courts have granted relief from

stay for cause in cases where the cause is lack of pre-petition payments coupled with particular

facts during the course of dealings between the parties such as those that exist in the relationship

between Camelot and the Debtor.[11]  I also noted that the procedural defects were either

inconsequential or had been remedied.  I wrote that in addition to the cause set forth in the

motion, Camelot may have cause for relief due to, *inter alia*, the Debtor's attempts to thwart the

forbearance agreement and the order granting relief from stay, the lack of equity in the Property

and the Debtor's apparent tender hopes of reorganization, the risk that this case will be

dismissed, converted or consolidated with the Chapter 7 due to the pending Chapter 7 or the

Debtor's bad faith in filing this case, and the delay that the Debtor has created in failing to

address his claims against Camelot.  I noted that it appears that Camelot may also have grounds

---

[11] *See, e.g., In re Pandyne, Inc.*, 1996 WL 33676729 (Bankr. E.D. Va. 1996), *In re Lexington Racquetball Club, Inc.*, 58 B.R. 103 (Bankr. E.D. Pa. 1986).

to seek relief from the automatic stay under 11 U.S.C. § 362(d)(4)[12].

I ordered Debtor's counsel to appear at the hearing on the other motions to address

whether he should be sanctioned for filing the Chapter 13 and the pleadings within and ordered

the Debtor to appear to address why his case should not be dismissed, converted or consolidated

with the pending Chapter 7. Debtor's counsel filed a response in which he stated that the case

law to which the Court cited was not applicable. He claimed that relief from stay was

unwarranted because although the forbearance agreement had expired, Camelot would not agree

to give him more time to refinance and he was forced to file to save his home. He also stated that

his vigorous defense was necessary because the Debtor's home is at stake. His motions for

sanctions were warranted, he offered, because in the motion for relief Camelot cited no cases and

only relied on pre-petition conduct and in its motion to dismiss it set forth at least two

misstatements of law and/or fact. He claimed that the filing was not only to delay foreclosure but

also to have an opportunity to repay creditors. He contended that under applicable case law, such

a filing is permissible. In his response, he never addressed the issue of the Debtor's eligibility to

be a Chapter 13 debtor.

III. The Hearing

I held a hearing on the forgoing motions and the Order. The hearing began with

Camelot's presentation on its motion to dismiss. Camelot explained that the case should be

dismissed for cause for a number of reasons including that the case was a bad faith filing. To

---

[12]This section is a new provision under the Bankruptcy Abuse Prevention and Consumer
Protection Act of 2005. It provides that a court shall grant relief from a stay affecting real
property if the "petition was part of a scheme to delay, hinder, and defraud creditors that involved
. . . (B) multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4).

demonstrate the bad faith, Camelot argued that given the facts in Petition 2, the Debtor would be

unable to complete a Chapter 13 plan.  The plan provides for a 0% payment and suggests a cause

of action against Camelot when the Debtor did not pursue the same during the Chapter 7 and

when the Debtor reaffirmed the debt via the forbearance agreement.  Moreover, under the plan's

proposed payment schedule, the Debtor would have to satisfy the mortgage within the five years

of the plan but would be unable to do so because the Debtor does not have the income to make

such monthly payments.

Camelot also argued that the Debtor was beyond the limits for being a Chapter 13 debtor.

The Debtor failed to list the values of the unsecured debt which he listed in the Chapter 7.  That

debt combined with the new debt in this case would total an amount that renders the Debtor

ineligible to be a Chapter 13 debtor.  Even if the Debtor were to establish that his debt to

Camelot was unsecured, it would result in unsecured debt more than double the debt limits.

There is no argument, according to Camelot, that could erase the Chapter 7 debts such that they

could not be considered when calculating the Debtor's eligibility.

Camelot offered other indicia of bad faith including the fact that during the pending

Chapter 7 it had obtained an order granting it relief from the automatic stay.  Camelot argued that

I should not permit case to go forward where there is no hope for reorganization and no issues in

this case that the Debtor has not already had an opportunity to pursue in the pending Chapter 7.

In response, the Debtor first argued that because Camelot had not raised the issue of

jurisdictional limits in its motion to dismiss the Debtor would not address the matter.  I pointed

out to the Debtor that the issue had been raised and asked him to address the same.

To frame the argument, I explained that the Debtor filed and listed in the Chapter 7

11

unsecured claims in the amount of $733,844 and there is no indication that the claims have been

satisfied.[13]  I noted that of that debt, the Debtor listed credit card debt of approximately $53,000

and did not describe that debt as contingent, unliquidated or disputed.[14]  I also pointed out that

the Debtor had listed a debt to Attorney Cullen for $82,000 and a debt to Arabella Insurance for

$41,944 neither of which he described as unliquidated, contingent or disputed.  In calculating

whether the Debtor exceeded the debt limits for Chapter 13, I added the claim of Citizens Bank

which the Debtor had listed in the Chapter 13 ($275,000) although noting that they had filed a

proof of claim in the Chapter 7 for $372,000, the nondischargeable credit card debt from the

Chapter 7 ($53,000) and the claim of Attorney Cullen of $10,000 and concluded that the Debtor

was well over the debt limit for a Chapter 13 debtor.[15]

    The Debtor offered a muted response.  He attempted to discuss the Camelot claim but I

explained that the Camelot claim was not part of the calculation.  The Debtor argued that the

issue of his personal liability for the Chapter 7 debts must be addressed.  The Debtor argued that

just because proofs of claims were filed in the Chapter 7 does not mean he is personally liable

and explained that in the previous case many of the claims were marked as contingent.  When the

Court explained that it was not using any of the contingent claims as part of the calculation, the

Debtor stated that he was not prepared to address the issue.   I explained that I could raise the

---

[13]The figure which I used at this point was the approximate total of the unsecured proofs
of claims filed in the Chapter 7 case.  The unsecured claims which the Debtor listed in the case
totaled $231,813 of which $178,205 were not listed as contingent, unliquidated or disputed.

[14]From the figures the Debtor used in Petition 1, the actual figure appears to be $53,273.

[15]I did not include the Arabella claim as that company had not filed a proof of claim in the
Chapter 7.

12

issue of eligibility at any time and, in fact, had raised the issue in the Order.  Based upon the

forgoing figures, I ruled that the Debtor had exceeded the debt limits and could not proceed as a

Chapter 13 debtor.

I then ruled that the most expeditious way to treat the matter was to grant the motion to

dismiss.  I discharged the show cause order and mooted the motion for relief.  I denied the two

sanction motions.

Thereafter, the Debtor filed an appeal of my order granting the motion to dismiss.  He

also filed his Motion for Stay Pending Appeal and a motion for an emergency hearing thereon.

The Debtor has also filed a Petition Requesting Direct Appeal to Circuit Court.   With respect to

a stay pending appeal, the Debtor argued that he was entitled to a stay because he could meet the

applicable factors for such relief.  It was particularly important in this case, he argued, because

absent a stay his house could be lost to foreclosure thereby mooting the appeal.

The Debtor argued that he will succeed on the merits of the appeal because I erroneously

granted the motion to dismiss.[16]  With respect to whether I could rely upon Petition 1, the Debtor

stated:

> While it is not disputed that the court can take judicial notice of its own dockets, it
> is incorrect to use the claims filed in the prior case to determine eligibility in this
> case.  Eligibility is determined as of the petition date, and not on matters occurring
> post-petition.  *In re DeJounghe*, 334 BR 760 (1st Cir. BAP 2005); *In re Smith*, 325
> BR 498 (Bkrtcy.D.N.H. 2005).  The starting point of the eligibility analysis is the
> debtor's schedules, in the absence of reason to doubt their accuracy or other
> uncertainty.  *Id.*  Similarly, the fact that claims were filed in the prior case does
> not mean that Marrama is liable for them, for the reasons stated below.

---

[16]In a footnote, the Debtor stated that because I  concluded that the Debtor was beyond the
debt limits I effectively was ruling on the Order and not the motion to dismiss where the issue
was not raised.  The creditor did raise the issue at the hearing and the Debtor and his counsel, an
attorney experienced in Chapter 13 practice, were alerted to the issue via the Order.

In preparing his schedules for the present case, Marrama was conscious of the
eligibility limitation in § 109(e) and was careful to assert, based on his best
recollection, the contingent nature of certain debts, listing them only out of
concern for potential due process issues.  Thus his assertion is entitled to judicial
deference, at least at this stage of the case.  The assertion of the amount of zero, in
some cases, is based on his belief that the creditor does not have an allowable
claim against him because he believes that the debt is that of RLM Flooring, Inc.,
rather than him, personally.  Absent some reason to pierce the corporate veil of
the corporation or a personal guaranty, he cannot be held liable for corporate
debts. . . .

At this stage, the court cannot properly disregard Marrama's assertion that he is
not liable for the debts listed as contingent in this case or in the prior chapter 7
case.  In order for him to be liable, there would have to have been a judicial
determination, pre-petition, that the corporate veil should be pierced.

Memorandum in Support of Motion for Stay Pending Appeal, p. 4.

In addition to claiming that in general I cannot look to Petition 1 and specifically that I
cannot look to corporate debts which were contained in Petition 1, the Debtor also argued that I
cannot look to the filed claims in the Chapter 7 as evidence of value because he has no standing
to object to those claims, citing *In re Choquette*, 209 B.R. 183 (Bankr. D. Mass. 2003).  As a
result of the latter argument, the Debtor explained, the filed claims would only be allowed by
operation of law and not through a judicial determination.   He also suggested that the creditors
in the Chapter 7 may no longer be able to assert their claims against him based upon the statute
of limitations.  In addition to the problems with using the Chapter 7 claims, the Debtor assigned
error to the use of the claim of Citizens Bank because that claim had not been liquidated.  The
Debtor explained that it was also error to determine the matter without an evidentiary hearing.

In addition to his likelihood of success on the three arguments above, the Debtor asserted
that in considering the balance of harm, the Debtor would be harmed by a foreclosure and such a
sale would moot his appeal.  Staying foreclosure, he explained, would not result in significant

14

harm to Camelot.  With respect to public policy, the Debtor contends that it would favor his

reorganization and the preservation of his home.  I held a hearing on the motion for a stay

pending appeal and took the matter under advisement.

IV.  Analysis

  1.  *Stay Pending Appeal*

The well-established standard for reviewing a motion for stay pending appeal requires

that the Debtor show that he is likely to succeed on the merits, would be irreparably harmed

absent relief, other parties will not be injured and the public interest would be furthered by the

granting of the stay.  *See, e.g., Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 16-17 (1st Cir.

2002) ("the *sine qua non* is whether the [movants] are likely to succeed on the merits.").  In order

to prevail on the first prong, the moving party must show that the likelihood of success is strong

or substantial.  *Access Cardiosystems, Inc. et al. v. Fincke (In re Access Cardiosystems, Inc.)*,

340 B.R. 656, 660 (Bankr. D. Mass. 2006).  With respect to his ability to succeed on the merits,

the Debtor addressed several issues set forth above which I will address *seriatim*.  As a threshold

matter, however, I clarify that the debt limit set forth in 11 U.S.C. § 109(e) ("Only an individual

with a regular income that owes, on the date of the filing of the petition, noncontingent,

liquidated, unsecured debts of less than $307,675 . . . may be a debtor under chapter 13 of this

title.") does not present a jurisdictional hurdle but rather is an eligibility requirement.  *See, e.g.,*

*In re San Miguel Sandoval*, 327 B.R. 493, 511 (B.A.P. 1st Cir. 2005), *In re Ross*, 338 B.R. 134,

136-7 (Bankr. N.D. Ga. 2006) ("Almost all courts now recognize that the filing of a chapter 13

petition by a debtor ineligible to do so under § 109(c) nevertheless commences a case that

invokes the jurisdiction of the bankruptcy court . . .").

15

A.  In Determining Eligibility for Purposes of 11 U.S.C. § 109(e), Whether the
Bankruptcy Court Can Look Outside of the Schedules of the Chapter 13

The Debtor contends that he will succeed on the merits of his appeal because it was error

for me to look outside of the schedules of the Chapter 13 and apply the value of the Chapter 7

debts, citing for support *In re DeJounghe*, 334 B.R. 760 ( B.A.P. 1ˢᵗ Cir. 2005) and *In re Smith*,

325 B.R. 498 (Bankr. D. N.H. 2005).

In *Dejounghe*, the BAP, considered a case where the Chapter 7 debtors converted to a

Chapter 11 and then attempted to convert to a Chapter 13 in response to a motion to dismiss.

The bankruptcy court ordered the debtors to show cause why their requested conversion should

not be denied because it appeared that they exceeded the debt limits set forth in §109(e).

With respect to what documents it may review when addressing eligibility, the *Dejounghe*

court explained

> Generally, eligibility for Chapter 13 is based upon debts as of the petition date and
> not upon post-petition events such as allowed claims, filed claims, or treatment of
> claims in a confirmed Chapter 13 plan. . . . Therefore, Chapter 13 eligibility is
> usually determined by the debtor's schedules. . . . As long as a debtor's schedules
> are completed after the exercise of due diligence and are filed in good faith, the
> schedules will determine a debtor's eligibility for Chapter 13. . . . Therefore, the
> starting point of the eligibility analysis is the debtor's schedules.  However, when
> it appears the debtor did not exercise reasonable diligence or good faith in
> completing and filing the schedules, the bankruptcy court may look to other
> evidence, including post-petition events, to determine eligibility.

334 B.R. at 768.

In *Smith*, the debtor filed for relief under Chapter 13 and the Chapter 13 trustee moved to

dismiss on the grounds that the debtor was ineligible to file for relief.  325 B.R. at 500.  In order

to determine eligibility, the court held that it must first look to the petition and should not rely on

post-petition events.  *Id.* at 502.   The court further counseled that "[w]hen it appears a debtor did

16

not exercise reasonable diligence or good faith in completing and filing the schedules, the Court

may look to other evidence, including postpetition events to determine eligibility." *Id.* To

determine the debtor's eligibility, the court analyzed several claims for which it needed to go

beyond the debtor's characterization of the claims. For example, the debtor failed to list a claim

of the Internal Revenue Service despite not having filed a tax return for three of the four years

prior to filing. *Id.* at 503.

> With respect to the IRS claim, the court ruled
>
> The Debtors' complete omission of any obligation to the IRS is indicative of, at
> worst, bad faith and, at best, a lack of reasonable diligence. In the absence of any
> tax obligation in the Debtors' schedules, the only evidence of the amount of the
> Debtors' obligations to the IRS is the proof of claim itself and the Debtors'
> amended proposed chapter 13 plan.

*Id.*

The court in *In re Redburn*, 193 B.R. 249 (Bankr. D. Mich. 1996), applied a similar

standard. In that case, the debtor filed for Chapter 13 relief prior to a nondischargeability trial

due to be conducted in his pending Chapter 7 case. *Id.* at 253. The debtor listed the claims of the

plaintiffs as "unknown" in his Chapter 13 petition. The court explained that the debtor knew the

amount of the plaintiffs' claim based upon a stipulated state court judgment and the claims the

plaintiffs had filed in the Chapter 7. The court stated that, as a result, the "Debtor possessed

ample information from which he should have calculated and listed the debt amounts for each

Objecting Creditor." *Id.* at 255. The court cautioned that the debtor could not "circumvent this

limitation on eligibility by simply ignoring what he knows and listing the amounts of the debt as

'unknown' in his schedules. To decide otherwise would eviscerate the chapter 13 eligibility

requirements." *Id.* at 256. The court held that because the debtor had listed his claims in bad

17

faith, it was appropriate to look to the claims which the creditors used in their proofs of claims in the Chapter 7 and applied those amounts for the purpose of determining eligibility. *Id*. at 256-7.

Based upon the forgoing,[17] if the Debtor's schedules were completed after the exercise of due diligence and were filed in good faith, I should have relied solely upon the schedules to determine the Debtor's eligibility for Chapter 13. Conversely, if it appears the Debtor did not exercise reasonable diligence or good faith in completing and filing the schedules, it was proper to look to other evidence to determine eligibility.

The Debtor claims his assertions as to the characterization of the debts should have been given judicial deference and that I could not apply the amount of the filed claims in the Chapter 7 to the tally of unsecured claims in the Chapter 13. He continues, "[t]he assertion of the amount of zero, in some cases, is based on the Debtor's belief that the creditor does not have an allowable claim against him because he believes that the debt is that of RLM Flooring, Inc., rather than him, personally." Memorandum, p.4. The Debtor, however, fails to recognize that in my calculation I used only the Debtor's credit card debt, the debt to Attorney Cullen[18] and the

---

[17]The standard set forth in *DeJonghe* and *Smith* appears to be well accepted. *See, e.g., Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 982 (9th Cir. 2001) ("eligibility should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith."), *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 757 (6th Cir. 1985) (ruling bankruptcy court may look outside the schedules if it appears that the debt is other than the debtor represented), *In re Arcella-Coffman*, 318 B.R. 463, 474-5 (Bankr. N.D. Ind. 2004) (concluding that the Seventh Circuit has modified *Pearson* and held that a court may look to outside materials notwithstanding debtor's good faith.).

[18] I disregarded the Debtor's characterization of that debt as unliquidated and disputed in part because the Debtor had not so characterized the debt in Petition 1 and because in that petition the debt was $82,000 and the Debtor had not offered a reason why it was suddenly so much smaller.

18

Citizens Bank debt to determine eligibility.[19]   These are the amounts that the Debtor offered in

his petitions as personal obligations.[20]   At no point was I attempting to pierce the corporate veil.

Under the forgoing case law and facts in this case, I cannot conclude that it was error to

look to Petition 1 and the claims register for that case.   While the Debtor seeks mightily to

describe the Chapter 7 as his previous case and irrelevant, the Chapter 7 is, in fact, a pending

case wherein the docket and the claims register contain a wealth of information.   The Debtor

could and should have consulted this information when he filed the Chapter 13.   *See, e.g.,*

*Marrama v. Citizens Bankr of Massachusetts (In re Marrama),* 430 F.3d 474, 483 (1st Cir. 2005)

("The bankruptcy court is entitled to demand utmost good faith and honesty from debtors in the

preparation of their schedules and statements of affairs."), *In re Pettey,* 288 B.R. 14, 21 (Bankr.

D. Mass. 2003) ("In light of the established nondischargeability of the [debtor's] obligation in

Chapters 7 and 11, the reasons for that nondischargeability, and the amount of his obligation to

them, the Debtor was obligated, in seeking relief under Chapter 13 [after his Chapter 7], to do so

with the most scrupulous good faith and fairness toward the [creditor]."). The Debtor assigned

---

[19]I did not use the amounts of any claims that have been filed in the above-captioned case.
Moreover, I also refrained from including the debts to Frederick Ciampa, EIC Development LLC
and Salem Five Cents Savings Bank even though the Debtor avoided their liens in the prior case
thereby rendering the claims unsecured.  In the initial motion to avoid liens, the Debtor attached
exhibits which established that these creditors held claims against not only the Debtor's former
company but the Debtor himself.  The claim of EIC Development was not an attachment but an
execution issued after judgment entered against the Debtor individually and his former company
in September of 2002.  The Debtor mysteriously describes this debt as "possible personal liability
for corporate debt" and contingent and disputed.  It appears that I easily could have included this
debt in my calculation.

[20]Case law reflects that a debtor's schedules constitute nonhearsay admissions.  *See, e.g.,*
*In re Babiballa,* 337 B.R. 911, 917 (Bankr. E.D. Wisc. 2006)*, In re Smith* 325 B.R. 498, 503
(Bankr. D. N.H. 2005)*, Larson v. GroosBank, NA,* 204 B.R. 500, 502 (1996)*, In re Leonard*, 151
B.R. 639, 643 (Bankr. N.D. N.Y. 1992)*, In re Davis*, 108 B.R. 95, 99 (Bankr. D. Md. 1989).

values to personal claims in the Chapter 7, the creditors filed proofs of claims and the Debtor was

denied a discharge. Accordingly, those claims survive the Chapter 7. Whether the Debtor may

have defenses or has filed a subsequent petition does not make those claims go away. He placed

a value of $0 on those claims but there is ample evidence to show that they exist in a higher

amount and he should have made an effort to ascertain those amounts.

Proofs of claims in the Chapter 7 for unsecured claims total approximately $733,844 and

it appears that no distribution has been made. Under the Bankruptcy Code, a proof of claim is

deemed allowed unless a party in interest interposes an objection. 11 U.S.C. § 502. Case law

suggests that the Debtor, in fact, could have interposed an objection but has not. *See, e.g., In re

Moss*, 320 B.R. 143,150 (Bankr. E.D. Mich. 2005) (explaining that there is an exception to the

rule that a debtor lacks standing to object to claims in a Chapter 7 "when the debtor has a non-

dischargeable debt, for which the debt will remain personally liable after the bankruptcy."). The

Debtor offered no explanation for his argument that there is a cognizable difference if the claims

in the Chapter 7 were allowed by operation of law as opposed to a judicial determination.[21] For

purposes of determining eligibility, I could have looked to the filed claims but did not.

Perhaps the Debtor intended to quibble with my use of the figures for the credit cards

which the Debtor set forth in Petition 1 but for which the Debtor applied a value of $0 in Petition

2. While the Debtor may be able to defend against those claims based upon the statute of

---

[21]To the extent that the Debtor is arguing that claims in his Chapter 7 would not be subject to the doctrine of res judicata, there is case law to the contrary. *See Martin v. Martin (In re Martin)*, 2005 WL 3789128 *4 (Bankr. S.D. N.Y. 2005) (ruling claim which arose prior to prior case in which debtor was denied discharge was entitled to res judicata effect). *See also, Rakozy v. Crasper (In re Crasper)*, 142 B.R. 396, 397 (Bankr. D. Idaho 1992) ("The court finds the denial of discharge under 11 U.S.C. § 727 issued in the debtor's prior bankruptcy proceeding to be res judicata as to all debts scheduled in that proceeding.").

limitations, he did not present that argument at the hearing or offer the same in Petition 2.

Moreover, a defense to a claim does not reduce the claim at the time a court is considering the

claim. *See In re Smith*, 325 B.R. 498, 504 (Bankr. D. N.H. 2005) ("The relevant determination is

the amount of the creditor's claim rather than the debtor's ultimate liability after taking into

account any defenses or counterclaims."), *In re Reader*, 274 B.R. 893, 896 (Bankr. D. Colo.

2002) ("'The majority of courts have held that merely because a debtor disputes a debt, or has

potential defenses or counterclaims that might reduce the creditors' actual collection, the debt is

not thereby rendered 'contingent' or 'unliquidated.'").

The Debtor filed Petition 2 at a time when he had a pending case. That case is open and

active.[22] It has a schedule of claims which include dollar amounts. It has a claims register. I

explained in the Order that in Petition 2 the Debtor mischaracterized at least one claim in Petition

2 as corporate when it was personal and upon further reflection I have established that another

debt was personal when it was characterized as corporate.[23] Based upon the Debtor's own

descriptions, many of the claims in both Petition 1 and Petition 2 are not corporate claims but in

fact claims against the Debtor personally. There exist two reported decisions of the First Circuit

which establish that the Debtor has acted in bad faith and has transferred assets with the actual

---

[22]The docket in the Chapter 7 reflects that the Debtor obtained an amended order on his Lien Motion after he filed the Chapter 13.

[23]*See* footnote 6 *supra*. It also appears that the Debtor failed to list any portion of the Camelot mortgage as unsecured when the amount of the first and second mortgages exceed the value of the house. *See, e.g., Scovis v. Henrichsen ( In re Scovis)*, 249 F.3d 975, 983 (9th Cir. 2001) ("Through the inclusion of a § 506(a) analysis to define 'secured' and 'unsecured' in the § 109(e) context, a vast majority of courts, and all circuit courts that have considered the issue, have held that the unsecured portion of undersecured debt is counted as unsecured for § 109(e) eligibility purposes."). Bifurcating Camelot's claim would result in an additional unsecured claim of approximately $25,000.

intent to defraud his creditors. The Debtor has been denied his discharge in his Chapter 7. The

Debtor made no attempt to ascertain the actual value of his nondischargeable claims other than to

offer that he has no factual basis when, at the time he filed the Chapter 13, he has ample

information on the docket in his other pending case. I hold that based upon the forgoing, there

are ample facts to warrant the conclusion that the Debtor did not exercise reasonable diligence or

good faith in completing and filing the schedules. As such, I cannot conclude that the Debtor has

a strong likelihood of success on the merits on with respect to his argument that it was error for

me to examine the docket and claims register of the Chapter 7.

B.  Whether the Claim of Citizens Bank is Unliquidated

In a footnote, the Debtor appears to argue that I should not have considered the Citizens

Bank claim because it was probably unliquidated because the amount of the claim was never

judicially determined and cannot be determined by reference to an agreement or by a simple

computation. The Debtor offered no factual support for his assertion that there is no agreement

or simple computation with respect to the Cititzens Bank claim and no legal support for his

assertions that for a claim to be liquidated it must have been judicially determined.

Whether a claim is liquidated or unliquidated refers "to a claim's value (and the size of

the corresponding debt) and the ease with which that value can be ascertained." *Mazzeo v.*

*United States of America*, 131 F.3d 295, 304 (2d Cir. 1997). Generally, a claim is considered

liquidated where it is calculable by reference to an agreement or by simple computation. *Id.*, *In*

*re Smith*, 325 B.R. 498, 505 (Bankr. D. N.H. 2005) ("the obligation will, of necessity, be a

liquidated claim because it can be readily determined with precision through simple arithmetic

computation."). If a claim is subject to dispute, it is not rendered unliquidated. *See, e.g., In re*

*Vaughn,* 276 B.R. 323, 326 (Bankr. D. N.H. 2002) ("The Debtor was able to value the claims

against him and, since the underlying matter involves a contract dispute, there is a readily

determinable figure relating to the value of what was delivered to the plaintiffs in the pending

litigation and what they should have received as a result of the bargain struck with the

defendants."), *In re Mitchell*, 255 B.R. 345, 360 (Bankr. D. Mass. 2000) (adopting majority case

law which holds that claim may be liquidated although subject to dispute).

In Schedule F, the Debtor did not list the debt as unliquidated, contingent or disputed and

has not amended the schedule to alter the boxes wherein he could have so described the debt.  In

the description of the debt he wrote that it was a possible personal liability on a corporate debt

but in his answer to the Order he agreed that he had personal liability for the debt.  This entry on

Schedule F is an admission of the Debtor that this debt is liquidated.

Moreover, the First Circuit has found that the Debtor's obligation to Citizens Bank arises

from a line of credit.  The proof of claim which Citizens Bank filed in the Chapter 7 contains two

promissory notes, two guaranties and a breakdown of the charges in the proof of claim.

Accepting the findings of the First Circuit and the proof of claim for which no party in interest

has interposed an objection, I conclude that an agreement as to the claim exists which renders the

claim liquidated for purposes of eligibility.  Accordingly, I cannot conclude that the Debtor has a

strong likelihood of success on the merits of his contention that the claim of Citizens Bank is

unliquidated.

### C.  Whether the Debtor Was Entitled to An Evidentiary Hearing

The Debtor did request an evidentiary hearing on the motion to dismiss.  Generally, a

motion to dismiss requires notice and a hearing.  11 U.S.C. § 1307(c).  "After notice and a

hearing" is defined to mean "after such notice as is appropriate in the particular circumstances

. . . " 11 U.S.C. § 102(1).   The BAP in *DeJounghe* explained that "after notice and a hearing"

does not require an evidentiary hearing "so long as the parties had a fair opportunity to offer

relevant facts and arguments to the court and to confront their adversaries' submissions."  334

B.R. at 766.  11 U.S.C. § 109(e) does not require an evidentiary hearing.  In response to my

questions about eligibility, the Debtor stated that he was unprepared to address the issue despite

the fact that I had specifically raised the issue in the Order.   The Debtor argued that all of the

debts from the Chapter 7 were contingent corporate debts.  When I explained that I was only

looking to the personal noncontingent debts, the Debtor could not respond despite having

received prior notice of the issue.[24]   The Debtor simply presented no viable response to the issue

of eligibility despite having notice of the issue and no valid reason why the matter should be

prolonged.

The matter of eligibility is one that must be determined at the outset.  *See In re Berenato*,

226 B.R. 819, 823 (Bankr. E.D. Penn. 1998) ("we believe that we are obliged to [determine

eligibility] as a threshold issue, in order to preserve the use of our resources to cases involving

debtors eligible to file under that Chapter. . . . If necessary, we believe that it is quite appropriate

for us to raise § 109(e) issues *sua sponte*, at the earliest possible stage in a Chapter 13 case."), *see*

*also*, *In re Bourque,* 153 B.R. 87, 95 (Bankr. D. Mass. 1993).  Courts generally agree that the

issue of eligibility does not require extensive inquiry.  *In re Reader,* 274 B.R. 893, 898 (Bankr.

D. Colo. 2002) (citing with approval *In re Barcal* 213 B.R. 1008 ( B.A.P. 1997), wherein panel

---

[24]I did state that these figures were conservative in that there were other debts which I
could have included.

24

ruled requiring evidentiary hearing on §109(e) issue would impose impractical burden.), *In re*

*Faulhaber*, 269 B.R. 348 (Bankr. W.D. Mich. 2001). Accordingly, I cannot conclude that the

Debtor has a strong likelihood of success on the merits of his argument that it was error to not

hold an evidentiary hearing.

Having concluded that the Debtor does not have a strong likelihood of success on the

merits, I need not address the Debtor's other arguments in support of his request for a stay

pending appeal. As the Debtor has not satisfied the primary factor required to obtain a stay, I

will enter an order denying his motion.

2. *Request for Cetification for Direct Appeal*

Under the newly enacted 28 U.S.C. § 158(d)(2), I can certify an appeal to the First Circuit

if I determine that the order granting the motion to dismiss (1) involves a question of law with no

controlling authority or is a matter of public importance; (2) the order addresses a question of law

of which there are conflicting decisions; or (3) an immediate appeal would materially advance

the progress of the case. The Debtor contends that this appeal meets the first criteria because

there is no controlling decision on what constitutes a contingent debt or the procedure for

determining eligibility. He also contends that an appeal to the First Circuit would materially

advance this case as it would give a binding decision on his eligibility.

I granted the motion to dismiss because I determined that the Debtor could not meet the

eligibility requirements. I did not address what constitutes a contingent debt because none of the

debts which I used in my calculation were debts that the Debtor described as contingent. It

appears that the Debtor's issue with the decision is that I could not look to the amounts of the

outstanding nondischargeable debts set forth in his pending Chapter 7. While there is no

controlling case law in this circuit, the case law above reflects that there is no significant dispute

regarding the applicable standard for looking at pending cases.  This is not an issue of significant

proportion or one that is certain to arise repeatedly.  Therefore, I cannot conclude that the Debtor

has met the first criteria.  As for the second, I am not convinced that the purpose behind

certification is to enable a litigant to obtain a binding decision from a circuit court on every

adverse ruling from this court.  As for the third prong, I cannot determine that a ruling from the

First Circuit, as opposed to an appeal to the BAP or the district court would materially advance

this appeal.  Accordingy, I will not certify the matter to the First Circuit.

V.  Conclusion

For the reasons set forth above, I will enter an order denying the requests for a stay

pending appeal and for certification.


William C. Hillman
United States Bankruptcy Judge


July 14, 2006